| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT TACOMA | |
| DANITA ROSS,<br><br>      Plaintiff,<br><br>  v.<br><br>NANCY A BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>      Defendant. | CASE NO. 3:16-CV-05903-RBL-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: May 5, 2017 |

  The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff Danita Ross filed this matter seeking judicial review of Defendant's denial of her application for disability insurance benefits ("DIB").

  After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to find Plaintiff's mental impairments severe at Step Two. The ALJ also failed to properly consider the medical opinion evidence of treating physicians Drs. Joseph Sullivan, M.D. and Tracy Sax, M.D. Had the ALJ considered all Plaintiff's severe impairments at Step Two and properly evaluated the medical opinion evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore harmful and the Court recommends this matter be reversed and remanded pursuant to sentence four of 42

U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this Report and Recommendation.

## FACTUAL AND PROCEDURAL HISTORY

On November 11, 2013, Plaintiff filed an application for DIB, alleging disability as of December 10, 2010. *See* Dkt. 9, Administrative Record ("AR") 26. The application was denied upon initial administrative review and on reconsideration. AR 26. A hearing was held before ALJ Jo Hoenninger on March 30, 2016. *See* AR 43-66. In a decision dated April 22, 2016, the ALJ determined Plaintiff to be not disabled. *See* AR 26-38. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-5; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to: (1) find Plaintiff's mental health condition to be non-severe at Step Two; (2) properly consider the medical opinion evidence; and (3) provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. *See* Dkt. 11, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I.   Whether the ALJ erred by finding Plaintiff's mental health condition did not constitute a severe impairment at Step Two.**

Plaintiff asserts the ALJ erred by finding Plaintiff's mental health condition non-severe at Step Two of the sequential evaluation process. Dkt. 11, 13. Defendant asserts the ALJ properly

considered Plaintiff's impairments and Plaintiff merely offers a different interpretation of the evidence. Dkt. 12.

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Regarding mental impairments, the ALJ will consider four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the ALJ rates the degree of a claimant's limitation "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id*. at (d)(1). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)).

At Step Two, the ALJ discussed medical evidence regarding Plaintiff's mental health conditions. AR 29-30. The ALJ then found Plaintiff had no limitations in the functional area of activities of daily living, mild limitations in the functional areas of social functioning and concentration, persistence or pace, and no episodes of decompensation. AR 30-31. The ALJ determined, "[b]ecause the claimant's medically determinable mental impairment caused no

more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it was nonsevere." AR 31.

First, the ALJ found Plaintiff had no limitations in activities of daily living because Plaintiff maintains her household by delegating household chores to her mother and children, drives, attends medical appointments, and has fairly complied with numerous medication trials. AR 30. The evidence, however, does not support the ALJ's finding. Plaintiff testified she has four children ages 24, 15, 12, and 8. AR 48. She drives three to four times per week to go to the store or take her children places. AR 49. Plaintiff delegates dish washing to her 12 and 15 year old children and Plaintiff's mother does her laundry. AR 57. Plaintiff does some grocery shopping, but her mother does most of the grocery shopping and prepares meals for Plaintiff or her children to put in the oven. AR 57. Plaintiff also reported to her doctor that she has manic highs where she takes on "everything in the world[.]" AR 607. She then becomes overwhelmed by all the activities and responsibilities and muddles through completing the tasks. AR 608. The evidence shows Plaintiff's activities of daily living are more limited than described by the ALJ. Therefore, the Court finds the ALJ's conclusion that Plaintiff has no limitations in activities of daily living is not supported by substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (finding an ALJ must not "cherry-pick" certain observations without considering their context).

Second, the ALJ determined Plaintiff had mild limitations in social functioning because Plaintiff isolates herself, had some difficulty dealing with her husband's request that she get a job, and was observed as somewhat irritable. AR 31. However, she had appropriate behavior, dress, grooming, and hygiene at numerous medical appointments. AR 31.

Social functioning refers to a claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (effective Sept. 29, 2016). The evidence shows Plaintiff was pleasant and cooperative during medical appointments. *See* AR 392, 400, 612. When seen by her treating psychiatrist, Plaintiff had fair grooming and intact hygiene. AR 626 ,629, 633, 644, 653. However, when Plaintiff is depressed as a result of her bi-polar disorder, Plaintiff will stay home, not do anything or see anyone, and will not even talk to her mother. AR 608. Plaintiff reported irritability and anger control fluctuation, and noted her emotional lability was interfering with her personal relationships. AR 548. Dr. Jennifer Coffman, Plaintiff's treating psychiatrist, determined Plaintiff's Global Assessment of Functioning ("GAF") score was 60, which indicates moderate social functioning difficulties. AR 613; *Tagger v. Astrue*, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008).[1] The evidence also shows Plaintiff does not attend church or other meetings, and spends most of her time in her home. AR 58.

The ALJ did not discuss the evidence showing Plaintiff has difficulty with social functioning when she is experiencing depression. Therefore, the Court cannot conclude the ALJ's finding that Plaintiff has only mild limitations in social functioning is supported by substantial evidence. *See Hutchinson v. Colvin*, 2016 WL 6871887, *4 (W.D. Wash., Nov. 22, 2016, J. Creatura) (noting the ALJ's treatment of the evidence of record at Step Two suggested improper "cherry-picking" to support the ALJ's decision "while failing to address aspects of the

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). It is "relevant evidence" of the claimant's ability to function mentally. *England v. Astrue*, 490 F.3d 1017, 1023, n. 8 (8th Cir. 2007). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Tagger*, 536 F.Supp.2d at 1173 n.6 (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34).

record supporting a finding of severe limitations"); *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject significant probative evidence without explanation").

Third, the ALJ determined Plaintiff's migraines caused mild limitations in the area of concentration, persistence, or pace. AR 31. The ALJ, however, did not discuss evidence showing Plaintiff's mental impairments caused limitations in this functional area. *See* AR 31. The record shows Plaintiff's bi-polar disorder causes low energy and concentration, and hypersomnolence. AR 608. Plaintiff also reported she struggles with irritability, distractibility, not finishing projects, and mood instability. AR 708. When she is manic, Plaintiff reports pressured speech and mind racing. AR 608. Further, Plaintiff's treating physician noted successful treatment of Plaintiff's depression would include improved focus. *See* AR 529.

There is evidence Plaintiff's mental health condition is causing limitations in her concentration, persistence, and pace. The ALJ, however, did not discuss this evidence when finding Plaintiff had mild limitations in this area. Rather, the ALJ only considered Plaintiff's physical impairment of migraines, finding Plaintiff's headache pain impacted her concentration, persistence, and pace. *See* AR 31. As the ALJ did not discuss evidence related to Plaintiff's mental health condition, the Court cannot conclude the ALJ properly considered all the evidence when finding Plaintiff had mild limitations in concentration, persistence, or pace. *See Flores*, 49 F.3d at 570-71. Therefore, the ALJ's third finding is not supported by substantial evidence.

Fourth, the ALJ found Plaintiff experienced no episodes of decompensation of any kind. AR 31. Plaintiff has not shown, nor does the Court find, she suffered from episodes of decompensation of an extended duration. *See* Dkt. 11. Therefore, the ALJ's fourth finding is supported by substantial evidence.

For the above stated reasons, the ALJ failed to consider the entire record when finding Plaintiff did not have a severe mental impairment at Step Two. Accordingly, the Court finds the ALJ erred. The record shows Plaintiff was diagnosed with depression, bi-polar disorder, and social anxiety disorder. *See e.g.* AR 544, 644. These conditions caused functional limitations. *See e.g.* AR 583 (extreme limitations in social functioning due to chronic headaches, anxiety, and bi-polar disorder); 608 (when depressed Plaintiff will not leave home or speak to anyone). Therefore, the Court finds the Plaintiff's mental health condition is a severe impairment.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)). If the ALJ accounts for all Plaintiff's limitations in assessing the RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

While the ALJ mentions bi-polar disorder in subsequent portions of her decision, she does not discuss the limitations caused by this impairment or include any mental limitations in the RFC. *See* AR 32-36. A review of the record shows the RFC assessment may have changed had the ALJ properly considered Plaintiff's mental impairment at Step Two. For example, the ALJ gave little weight to Plaintiff's subjective symptom testimony and the opinion of Dr. Joseph Sullivan, Plaintiff's treating physician, who found Plaintiff's social functioning was extremely

limited due to Plaintiff's bi-polar disorder, anxiety, and chronic headaches. *See* AR 33-36. Had the ALJ properly considered Plaintiff's mental impairments at Step Two, Plaintiff's subjective testimony and the opinion evidence of Dr. Sullivan may have been given additional weight and additional limitations, such as limitations in social functioning, may have been included in the RFC assessment and hypothetical question posed to the vocational expert, Patricia Ayerza. As the ALJ's failure to properly consider Plaintiff's mental impairment severe at Step Two and throughout the remaining sequential evaluation process impacts the ultimate disability decision, it is not harmless.

The ALJ's error at Step Two requires remand to the Commissioner for proper consideration of Plaintiff's severe impairments and to reconsider each of the remaining steps in the administrative process incorporating Plaintiff's mental impairment and the work limitations possibly caused by this additional severe impairment. As the ALJ's error at Step Two impacts all aspects of the ALJ's decision, the ALJ is instructed to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process.[2]

**II.     Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff argues the ALJ failed to properly consider the opinions of treating physicians Drs. Joseph Sullivan, M.D. and Tracy Sax, M.D. Dkt. 11. While the ALJ's error at Step Two requires the ALJ to re-evaluate this entire matter on remand, the Court specifically directs the ALJ to reconsider the opinions of Drs. Sullivan and Sax because the ALJ provided conclusory reasons for giving little weight to these opinions.

---

[2] While the Court finds the mental impairment is severe, the Court makes no determination on how this severe impairment will impact the ALJ's evaluation of the remaining sequential evaluation process, including Plaintiff's credibility, the medical opinion evidence, and Plaintiff's RFC.

1       In March of 2016, Drs. Sullivan and Sax completed questionnaires regarding Plaintiff's functional abilities. *See* AR 580-86. The ALJ discussed the findings of Drs. Sullivan and Sax and gave the opinions little weight. AR 36. The ALJ stated,

> I give little weight to the opinion of Dr. Sullivan because (1) his assessment has no explanation for the limitations and (2) his opinion is inconsistent with the medical evidence of record which reflects improvement. (3) Also, the functional opinion of Dr. Sullivan is inconsistent with the claimant's acknowledged ability to raise a family and be a foster parent.

AR 36 (numbering added). Regarding Dr. Sax's opinion, the ALJ stated,

> I give little weight to the opinion of Dr. Sax because (1) his assessment has no explanation for the limitations and (2) it is not consistent with the record as a whole inclusive of his own records where he notes improvement in the claimant's condition secondary to her compliance with treatment and medications.

AR 36 (numbering added).

      "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (*citing Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)). As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey*, 849 F.2d at 421-22 (internal footnote omitted).

      The ALJ provided conclusory reasons for giving little weight to the opinions of Drs. Sullivan and Sax. *See* AR 452. She failed to provide her interpretation of the evidence and she did not provide a detailed explanation as to why the opinions should be rejected. The ALJ failed

to explain how the opinions alleged lack of explanation warranted little weight, what evidence in the record was inconsistent with the doctors' opinions, or how Plaintiff's ability to raise a family was inconsistent with Dr. Sullivan's opinion. *See* AR 36. The vague, conclusory statements rejecting the opinions of Drs. Sullivan and Sax do not reach the specificity necessary to justify rejecting the opinions and are insufficient for this Court to determine if the ALJ properly considered the evidence. Therefore, the ALJ erred. *See Embrey*, 849 F.2d at 421-22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Had the ALJ properly consider the opinions of Drs. Sullivan and Sax, the RFC and hypothetical question may have included additional physical and mental limitations. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

### III. Whether the ALJ erred by failing to provide clear and convincing reasons supported by the record to discount Plaintiff's subjective testimony.

Plaintiff contends the ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. Dkt. 11, pp. 11-12. The Court concludes the ALJ committed harmful error at Step Two and in assessing the medical opinion evidence. *See* Sections I & II, *supra*. Because the ALJ's reconsideration of Step Two and the medical opinion evidence may impact her assessment of Plaintiff's subjective testimony, the ALJ must reconsider Plaintiff's subjective testimony on remand.

**IV. Whether the case should be remanded for an award of benefits.**

Plaintiff argues this matter should be remanded with a direction to award benefits. *See* Dkt. 11, pp. 12-13. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

The Court has determined the ALJ must re-evaluate this entire matter in light of Plaintiff's mental impairment. Further, issues remain which must be resolved concerning the medical evidence and Plaintiff's subjective testimony. Therefore, remand for further administrative proceedings is appropriate.

CONCLUSION

Based on the above stated reasons, the undersigned recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. The undersigned also recommends judgment be entered for Plaintiff and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 5, 2017, as noted in the caption.

Dated this 14th day of April, 2017.

David W. Christel
United States Magistrate Judge